UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARLA BRINTLEY,

               Plaintiff,

v.

BELLE RIVER COMMUNITY CREDIT
UNION,

               Defendant.
_____/

Case No. 17-13915

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [6]; DENYING AS MOOT
PLAINTIFF'S MOTION FOR LEAVE TO FILE RESPONSE [34]**

Plaintiff, Karla Brintley, a permanently blind woman, commenced this action against Defendant Belle River Community Credit Union alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 12181 *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.110 *et seq.*

Plaintiff alleges that Defendant's website contains access barriers which prevent visually-impaired individuals, like herself, from equal enjoyment of and access to Defendant's services.

Before the Court is Defendant's Motion to Dismiss [6] filed on February 5, 2018. For the reasons stated below, Defendant's Motion is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Michigan resident who is permanently blind and uses a screen reader to access the internet. Screen-reading software vocalizes visual information and is the only method by which a blind person may independently use the internet. Defendant is a Michigan credit union that operates a website, brccu.com, which provides information about its locations, services, and amenities. Plaintiff has tried several times to access Defendant's website, but has faced barriers which have hindered her from effectively browsing for locations, amenities, and services and deterred her from visiting Defendant's branches.

On December 5, 2017, Plaintiff, through counsel, commenced four separate actions in the Eastern District of Michigan against different Michigan credit unions alleging violations of the ADA and the PWDCRA. The cases were assigned to this Court as companion cases.

On February 5, 2018, Defendant filed this Motion to Dismiss [6] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Motion is fully briefed.[1] The Court held a hearing on the Motion on May 21, 2018.

## LEGAL STANDARDS

Defendant moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. "Standing is thought of as a 'jurisdictional' matter,

[1] The Michigan Credit Union League ("MCUL") has filed an amicus brief.

and a plaintiff's lack of standing is said to deprive a court of jurisdiction." *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) (internal citation omitted). "[P]laintiff has the burden of proving jurisdiction in order to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002).

Defendant also moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ANALYSIS

### I. Plaintiff has standing to pursue this action

"Federal courts may exercise jurisdiction only where an actual 'case or controversy' exists." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 709–10 (6th Cir. 2015) (citing U.S. Const. art. III, § 2). "Courts have explained the case or controversy requirement through a series of justiciability doctrines, including,

perhaps the most important, that a litigant must have standing to invoke the jurisdiction of the federal courts." *Id.* at 710 (internal citation and quotation marks omitted).

To establish Article III standing, a plaintiff must allege that: she suffered an injury in fact; a causal connection exists between the injury and conduct complained of; and it is likely the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (internal citations omitted).

"The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039–40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

**A. Injury-in-fact**

"The injury-in-fact requirement requires a plaintiff to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016) (citing *Lujan*, 504 U.S. at 560).

Defendant argues that Plaintiff has failed to demonstrate that she suffered concrete harm because she has not been denied any actual services such as the ability to deposit money or obtain a loan. According to Defendant, Plaintiff cannot

make a showing of concrete harm because she is neither a member, nor eligible to become of a member, of the credit union.

Relying on a series of cases from the Eastern District of Virginia in which blind plaintiffs have sued credit unions for violating Title III, Defendant argues that Plaintiff's ineligibility for membership is fatal to her claim for relief. In Virginia, the Eastern District has repeatedly dismissed the plaintiffs' claims for lack of standing because they were neither members, nor eligible to become members, of the respective credit unions. *See, e.g.*, *Carroll v. N.W. Fed. Credit Union*, No. 17-cv-01205 (E.D. Va. Apr. 16, 2018); *Carroll v. Wash. Gas Light Fed. Credit Union*, No. 17-01201 (E.D. Va. Apr. 4, 2018); *Carroll v. ABNB Fed. Credit Union*, No. 17-cv-521, 2018 WL 1180317, at *3 (E.D. Va. Mar. 5, 2018) ("In the absence of allegations that show that Mr. Carroll is or could possibly become a member of ABNB, he has not suffered a concrete injury from being unable to access information about the services available to members of ABNB."); *Griffin v. Dep't of Labor Fed. Credit Union*, No. 17-1419, (E.D. Va. Feb. 21, 2018) ("Without membership or even the ability to become a member, there is no harm to plaintiff . . . .").

Contrary to Defendant's position, eligibility for membership in the credit union is not a prerequisite for standing. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 679 (2001) (noting that Title III does not contain a "clients or customers"

limitation). By requiring the plaintiffs to demonstrate membership, or eligibility for membership, the Eastern District of Virginia essentially imposes an additional requirement for standing beyond a particularized and concrete injury.

The barriers Plaintiff encountered when she tried to access Defendant's website constitute a concrete and particularized injury for purposes of establishing Article III standing. *See Spokeo*, 136 S. Ct. at 1543 ("A concrete injury need not be a tangible injury."); *see also Doran*, 524 F.3d at 1042 n. 5 ("[T]he access barriers that . . . plaintiff actually encountered or about which he had personal knowledge [] 'confer' standing on him under Article III."). Because of these barriers, Plaintiff has been denied the ability to effectively browse for Defendant's services and locations, determine eligibility for membership, and compare Defendant's services and advantages with its competitors. *See Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908, 913 (W.D. Pa. 2017) (holding that the plaintiffs sufficiently pled an injury-in-fact where they alleged inability to conduct online research or compare financial services and products).

Moreover, such barriers to access "result in exclusion, segregation, and other differential treatment of persons with disabilities—precisely the types of systemic discrimination the ADA seeks to erase." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017).

Because Plaintiff seeks injunctive relief, despite having demonstrated that she suffered a concrete and particularized injury, she must also demonstrate that she faces a real or immediate threat that she will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (internal citation omitted). The Court agrees with Defendant that the Complaint does not satisfy this additional requirement, as it is devoid of allegations concerning Plaintiff's plans or intent to use Defendant's services in the future. Nonetheless, seeing as Plaintiff also seeks compensatory damages in this action, this technicality is not dispositive. In the interest of justice, the Court grants Plaintiff's request for leave to amend the Complaint, so that she may pursue her claim for injunctive relief in conjunction with her claim for damages. *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Redressability

This element of standing requires Plaintiff to show that a favorable decision by the Court will redress the injury of which she complains. *Larsen v. Valente*, 456 U.S. 228, 270 (1982). "Redressability thus requires that prospective relief will remove the harm, and the plaintiff must show that [s]he personally would benefit in a tangible way from the court's intervention." *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 670 (6th Cir. 2007) (internal citations and quotation marks omitted).

Defendant argues that a ruling in Plaintiff's favor would not redress her alleged injury because, as a non-member of the credit union, Plaintiff would still be prohibited from utilizing its services notwithstanding any modification to its website.

Defendant's argument mistakenly assumes that the harm Plaintiff seeks to remedy is her inability to use Defendant's services. But, the harm for which Plaintiff seeks relief is her inability to access Defendant's website. As a result of the barriers on Defendant's website, Plaintiff is unable to effectively browse for Defendant's locations, services, and membership eligibility. An order requiring Defendant to comply with Title III would provide Plaintiff with the opportunity to access the website and explore Defendant's amenities – precisely the same opportunity Defendant already affords to sighted individuals who are also non-members.

## II. Plaintiff has stated a claim for relief under the ADA

Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).[2]

---

[2] "The PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the

"The phrase public accommodation is defined in terms of 12 extensive categories, which the legislative history indicates 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." *PGA Tour*, 532 U.S. at 676–77.

It is undisputed that a credit union constitutes a place of public accommodation. However, the circuits are split on the issue of the applicability of Title III to websites associated with places of public accommodation. Courts within the First, Second, and Seventh circuits have held that the ADA may "apply to a website independent of any connection between the website and a physical place." *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1318 (S.D. Fla. 2017) (internal citations omitted). On the other hand, courts within the Third, Ninth, and Sixth circuits have held "that goods and services provided by a public accommodation must have a sufficient nexus to a physical place in order to be covered by the ADA." *Id.* (internal citations omitted).

Defendant argues that Title III does not apply to its website because the Sixth Circuit has limited the applicability of Title III to physical structures. Defendant further argues that even if Title III applied to non-physical locations,

---

plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (internal citation and quotation marks omitted). Because neither party asks the Court to treat Plaintiff's ADA claim differently than her PWDCRA claim, the Court analyzes the claims together. *See id.*

Plaintiff has failed to allege a nexus between the website and the location to qualify for relief under the statute.

Defendant relies on *Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580 (6th Cir. 1995) and *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997). In *Stoutenborough*, the plaintiff, a hearing impaired individual, argued that the NFL's "blackout rule," which prohibited local broadcasters from televising home games that were not sold out, violated Title III because it denied him access to televised football games. 59 F. 3d at 582. The Sixth Circuit rejected this argument explaining that "the prohibitions of Title III are restricted to 'places' of public accommodation, disqualifying the [NFL], its member clubs, and the media defendants." *Id.* at 583. The Court further observed that the service the plaintiff sought did not involve a place of public accommodation. *Id.*

Moreover, in *Parker*, the Sixth Circuit reaffirmed that Title III applies to physical places of public accommodation. At issue in *Parker* was an employer's disability benefits plan that afforded longer benefits to employees who became disabled from physical illness than to employees who became disabled from mental illness. 121 F.3d 1006. In denying the plaintiff's claim for relief under the ADA, the Court explained that Title III was inapplicable to her claim because she challenged the disparity in a benefits plan offered by her employer, as opposed to a plan offered by a physical insurance office.

The Court further explained that the plaintiff was not entitled to relief because there was "no nexus between the disparity in benefits [offered by the employer] and the services which MetLife offers to the public from its insurance office." *Id.* at 1011 (internal citation omitted). Ultimately, the Court held that the disability plan was not a "good offered by a public place of accommodation," emphasizing that "a public accommodation is a physical place[.]" *Id.* at 1014.

Defendant's interpretation of *Stoutenborough* and *Parker* as precluding relief under Title III for all claims concerning websites is misplaced. *Parker* does not stand for the proposition that a "plaintiff must physically enter a place of public accommodation in order to state a claim under Title III of the ADA." *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 876 (N.D. Ohio 2018). In fact, the Sixth Circuit "expressed no opinion as to whether a plaintiff must physically enter a public accommodation to bring suit under Title III as opposed to merely accessing, by some other means, a service or good provided by a public accommodation." *Parker*, 121 F.3d 1006, 1011 fn.3.

Courts have construed *Parker* as adopting the "nexus theory." *See, e.g.*, *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 33 n. 3 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000); *Castillo*, 286 F. Supp. 3d at 876; *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 388 (E.D.N.Y.

2017); *Gil*, 242 F. Supp. 3d at 1319; *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 569 (D. Vt. 2015).

Under this theory, discrimination in violation of Title III exists "if the discriminatory conduct has a 'nexus' to the goods and services of a physical location." *Andrews*, 268 F. Supp. 3d at 388. In other words, an "inaccessible website of a brick-and-mortar retail store could run afoul of the ADA if the website's inaccessibility interferes with the 'full and equal enjoyment' of the goods and services offered at the physical store." *Id.* at 389.

In *Castillo*, the Northern District of Ohio, applying *Parker*, recently held that a visually-impaired plaintiff had stated a Title III claim against a retailer for denying her full and equal enjoyment of its website. 286 F. Supp. 3d at 876-77. The Court ruled that the plaintiff had stated a Title III claim because she alleged a sufficient nexus between the defendant's website and its in-person stores. *Id.* at 877. To support its finding of a sufficient nexus, the Court referred to the following paragraphs in the complaint:

> 28. The goods and services offered by Defendant's website include, but are not limited to the following: find store locations; learn about sales, offers and discounts (both in-store and online); the ability to browse product selections and to find product information; and make purchases.
>
> 36. Similarly, the access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting or locating brick-and-mortar stores selling Defendant's products.

37. While attempting to navigate Joann.com, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to:

> b. Plaintiff encountered links and buttons that are inactive or otherwise not accessible by keyboard. Plaintiff visited Defendant's website to shop for craft supplies and to locate a store; however, she encountered cursor traps that rendered the site inaccessible via screen-reader, unlabeled links that stymied her search, and forms that were unintelligible such that she could not place an order.

*Id.* at 880-81.

In this case, the Complaint sufficiently alleges a nexus between Defendant's website and its brick-and-mortar locations. Similar to *Castillo*, in which the retailer's website provided goods and services including information regarding store locations, sales, and products, here, Defendant's website provides goods and services including a store locator, descriptions of amenities, and information about the services Defendant offers. Compl., ¶ 4. Moreover, like *Castillo*, in which the barriers to access deterred the plaintiff from visiting the defendant's brick-and-mortar stores, in this case, the access barriers on Defendant's website have deterred Plaintiff from visiting Defendant's physical locations. Compl., ¶ 15.

In today's world, accessing the internet is perhaps the most convenient and efficient way for the public to receive information about businesses and their services. In light of our tech-dependent reality, Defendant's argument that its website is insufficiently linked with its physical locations is simply illogical.

Because Plaintiff has alleged a nexus between Defendant's branches and its website, Title III is applicable to Plaintiff's claims.[3]

### III. Plaintiff's request for injunctive relief does not violate due process

"[D]ue process requires a statute to give adequate notice of its scope." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972)).

Defendant argues that Plaintiff's request for injunctive relief violates due process because neither the ADA itself nor its regulations provide website accessibility guidelines. Without regulations from the Department of Justice on the issue of website accessibility, Defendant maintains that it lacks adequate notice of the modifications necessary for compliance with the ADA.

This argument is without merit. Title III is not "so indefinite in its terms that it fails to articulate comprehensible standards to which a person's conduct must conform." *Id.* Moreover, Plaintiff is simply seeking an order requiring Defendant to comply with Title III; she is not dictating how Defendant must comply with the statute. *Castillo*, 286 F. Supp. 3d at 882. Therefore, Plaintiff's request for relief does not violate due process.

---

[3] Plaintiff argues that the plain language of Title III covers goods and services including websites, citing district courts within the First Circuit to support her interpretation. But, *Parker* forecloses such a reading of the ADA in this Circuit. Because the Court reaches its conclusion through its application of the nexus theory, it need not address whether the website itself constitutes a place of public accommodation. *See Castillo*, 286 F. Supp.3d at 881.

## CONCLUSION

The purpose behind the ADA is "to remedy widespread discrimination against disabled individuals." *PGA Tour*, 532 U.S. at 674. Preventing Plaintiff from pursuing her claims would only serve to thwart this laudable goal. The barriers to access Plaintiff has faced constitute an injury-in-fact for purposes of establishing standing. Furthermore, there is a clear nexus between Defendant's website and its branch locations for purposes of stating a claim under Title III.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss [6] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend her complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Response [34] is **DENIED as moot**.

**SO ORDERED**.


<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: July 20, 2018                        Senior United States District Judge